AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
District of New Mexico

FILED
United States District Court
Albuquerque, New Mexico

Mitchell R. Elfers
Clerk of Court

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
) Case No.  **21mr840**
One (1) "Beverly Hills Polo Club" brand black colored )
backpack with no name tag attached )
)

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the _____ District of ___New Mexico___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC 841 | Possession With Intent to Distribute Controlled Substances |

The application is based on these facts:
See Attached Affidavit, which has been approved by AUSA Shana Long.

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

/s/ Jarrell W. Perry
Applicant's signature

Jarrell W. Perry, Special Agent
Printed name and title

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
___telephonically sworn and electronically signed___ *(specify reliable electronic means)*.

Date: 06/22/2021

/s/ Judge's signature

City and state: Albuquerque, New Mexico

United States Magistrate Jerry H. Ritter
Printed name and title

## ATTACHMENT A

One (1) "Beverly Hills Polo Club" brand black colored backpack with no name tag attached (the SUBJECT PROPERTY) which is presently located at the DEA Albuquerque District Office. The SUBJECT PROPERTY is depicted in the photograph below:



## ATTACHMENT B

Controlled substances, including Cocaine, Heroin, Methamphetamine, Marijuana, Ecstasy, Fentanyl, Phencyclidine (PCP), prescription narcotics and/or steroids.

## AFFIDAVIT IN SUPPORT OF APPLICATION

I, Jarrell W. Perry, being duly sworn, hereby depose, and state as follows:

I am a Special Agent of the Drug Enforcement Administration (DEA). I have been so employed since September, 1998. Prior to my employment with the DEA, I was a Police Officer for approximately six years. By virtue of my employment with the DEA, I am authorized to conduct investigations of violations of the Controlled Substances Act. Over the course of my twenty-eight years in law enforcement, I have been assigned to the DEA Albuquerque District Office Interdiction Unit for approximately 21 years and have been involved in over 1,900 seizures of illegal narcotics and United States Currency on Amtrak Trains, Airports, packaging services and various bus companies. I have also participated in and/or executed many search warrants involving various forms of luggage. I am currently assigned to the Albuquerque District Office Interdiction Group.

This affidavit is offered in support of an application seeking authorization to conduct a search for contraband contained in one (1) "Beverly Hills Polo Club" brand black colored backpack with no name tag attached (hereinafter referred to as the SUBJECT PROPERTY). It is my belief that the SUBJECT PROPERTY currently contains evidence of violations of Title 21 United States Code, Section 841(a) (1), the manufacture, distribution and possession with intent to distribute a controlled substance. Because this affidavit is being submitted for the limited purpose of obtaining a search warrant, I have not included each and every fact known to me concerning this investigation. I have also relied on the experience and assistance of DEA Task Force Officer (TFO) Rey Zamarron during this investigation.

## BACKGROUND OF THE INVESTIGATION

On June 22, 2021, S/A Perry and TFO Zamarron were at the Greyhound bus station in Albuquerque, New Mexico to check the eastbound Greyhound bus that makes a regularly scheduled stop in Albuquerque, New Mexico. S/A Perry boarded the bus prior to the passengers reboarding with destinations that are east of Albuquerque, New Mexico.

S/A Perry approached a male, later identified as Brandon Jarmel HARRIS, displayed his badge and identified himself as a police officer to HARRIS and asked for and received consent to speak to HARRIS. S/A Perry asked HARRIS where he was traveling to and HARRIS said Indianapolis. S/A Perry asked HARRIS where he was traveling from and HARRIS said Arizona. S/A Perry asked HARRIS where he lived and HARRIS said that he lived in Indianapolis. HARRIS said that he was in Arizona for two days. S/A Perry observed that HARRIS had his bus ticket in his hand and asked HARRIS for permission to see his bus ticket. HARRIS handed S/A Perry his bus ticket. As HARRIS was handing S/A Perry his bus ticket, S/A Perry observed that HARRIS' hand was visibly shaking. S/A Perry reviewed the bus ticket and immediately returned it to HARRIS.

S/A Perry asked HARRIS if he traveled via bus to Arizona and HARRIS dropped his head, looking down towards the floor and did not answer the question. S/A Perry asked HARRIS if he had identification with him and HARRIS handed S/A Perry an Indiana identification card. As HARRIS was handing S/A Perry his identification, S/A Perry observed

2

that HARRIS' hand was visibly shaking. S/A Perry reviewed the identification card and immediately returned it to HARRIS.

S/A Perry asked HARRIS if he had luggage with him on the bus and HARRIS identified a black colored backpack that he had strapped on his upper back as belonging to him. S/A Perry asked HARRIS if he would consent for a search of his backpack for contraband and HARRIS said no. S/A Perry asked HARRIS if he would open up the backpack to show S/A Perry the contents and HARRIS opened up the two small compartments in the front section of the backpack. S/A Perry asked HARRIS if he could open up the main compartment of the backpack and HARRIS said that he could not get inside of the backpack.

S/A Perry observed a small lock attached to the main compartment of the backpack and asked HARRIS if he placed the lock on the backpack and HARRIS said that someone else put the lock on the backpack. HARRIS said that he did not have a key to the lock. HARRIS said that his cousin put the lock on the backpack in Phoenix and that the backpack also belonged to his cousin. HARRIS said that his cousin gave him the backpack to transport on the bus. S/A Perry asked HARRIS his cousin's name and HARRIS paused, then said that it was Colton. HARRIS said that he did not know his cousin's last name. HARRIS said that he did not have a phone number for his cousin, who lives in Phoenix. S/A Perry observed that HARRIS had sweat beads form on his forehead and begin to roll down the sides of his face during the conversation.

S/A Perry asked HARRIS if he knew the contents of the main compartment of the backpack and HARRIS said no. S/A Perry asked HARRIS if he knew if there was anything illegal inside of the main compartment and HARRIS said that he did not know. S/A Perry asked HARRIS what he was supposed to do with the backpack when he arrived in Indianapolis.

HARRIS said that he was supposed to call his cousin in Phoenix to get instructions to give the backpack to someone in Indianapolis. S/A Perry knew from his experience that the above listed facts are consistent with passengers that are transporting luggage containing illegal narcotics.

S/A Perry asked HARRIS if he would allow a narcotics canine to conduct a sniff of the black backpack for the odor of illegal narcotics and HARRIS said yes. S/A Perry informed HARRIS that a narcotics canine was not on scene and that one would be called to arrive in a few minutes. S/A Perry informed HARRIS that the bus was leaving in a few minutes and asked HARRIS if he wished to exit the bus to observe the canine sniff or continue his trip on the Greyhound bus. HARRIS could not make a decision as to what he wished to do.

Due to the totality of the circumstances, S/A Perry determined from his experience that HARRIS' backpack was being detained to allow a narcotics canine to conduct a sniff of the backpack. S/A Perry informed HARRIS that his black backpack was being detained in order for S/A Perry to allow a narcotics canine to conduct a sniff and to possibly obtain a search warrant to search the contents. Due to time constraints, S/A Perry informed HARRIS that if nothing illegal was obtained inside of the backpack after a narcotics canine sniff and possible search warrant to search the contents, that the backpack would be shipped via overnight express shipping to the address that HARRIS provided to S/A Perry. HARRIS continued his travel on the Greyhound Bus.

Approximately 15 minutes later, DEA TFO Jason Franklin deployed his narcotics canine on HARRIS' black backpack and informed S/A Perry that his narcotics canine did not alert to the backpack. S/A Perry knows from his experience of 21 years of working interdiction and working with numerous narcotics canine handlers during those 21 years, that narcotics canines

are trained to only alert to the odor of Cocaine, Heroin, Marijuana and Methamphetamine. S/A Perry also knows from his experience that narcotics canines are not trained to the odor of Fentanyl, Phencyclidine (PCP), prescription narcotics, steroids and weapons. S/A Perry also knows from his experience of working with and speaking with numerous narcotics canine handlers that occasionally illegal narcotics are packaged in a fashion to not allow the odor of the illegal narcotics to be present for the narcotics canine to smell the odor.

Based on the above listed facts listed throughout this affidavit, it is my belief that HARRIS has concealed within the SUBJECT PROPERTY controlled substances.

Wherefore, your Affiant respectfully requests that a search warrant be issued authorizing the search for the items outlined above.

This search warrant and supporting affidavit were approved by Assistant United States Attorney Shana Long.

Jarrell W. Perry, Special Agent
Drug Enforcement Administration

Electronically signed and telephonically sworn,

June 22, 2021, at Albuquerque, New Mexico

Jerry H. Ritter
United States Magistrate Judge

5